EDWARD J. BLAKE, Plaintiff-Appellant, *v.* TRI-STATE CRANE SERV-
ICE, INC., *et al.*, Defendants and Third-Party Plaintiffs-Appellees—(Sprague
Iron Works, Third-Party Defendants).

First District (5th Division)   No. 81—1658

Opinion filed May 20, 1983.

Terrence E. Leonard, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Kevin R. Sido and Stephen R. Swofford, of counsel), for appellee Tri-State Crane Service, Inc.

Van Duzer, Gershon, Jordan & Petersen, of Chicago (Horace W. Jordan, of counsel), for appellee Enger-Vavra, Inc.

JUSTICE MEJDA delivered the opinion of the court:

Plaintiff Edward J. Blake filed suit under the Structural Work Act (the Act) (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*) to recover for injuries sustained at a construction site. The court entered judgment on a directed verdict in favor of defendant Enger-Vavra, Inc., and entered judgment on a jury verdict in favor of defendant Tri-State Crane Service, Inc. (Tri-State). Upon denial of plaintiff's post-trial motion, plaintiff appealed. The issues are whether: (1) errors as to instructions were waived; (2) the court erred in refusing plaintiff's tendered instructions; (3) the jury verdict in favor of the subcontractor Tri-State was contrary to the manifest weight of the evidence; and (4)

the court erred in directing a verdict in favor of the general contractor, Enger-Vavra, Inc. We affirm.

Defendant Enger-Vavra, Inc., was the general contractor for the construction of a structural steel building for use as a racquetball court. Defendant Tri-State leased a crane and crane operator to Sprague Iron Works, Inc. (Sprague), a subcontractor. Sprague employed plaintiff and four other ironworkers on the project.[1]

Plaintiff sustained injuries while working on the construction site as a "connector." A connector sets joists into proper position before they are permanently fastened in place. Joists are parallel horizontal bars of iron extending from wall to beam to support the boards of the floor or ceiling of a building. The joists are hoisted by a crane which utilizes cables attached to a movable boom. At the end of the cable there is a large weighted ball called the "headache ball" which has a hook at the bottom. Attached to the cable above the headache ball is another cable, a "choker," which has a loop at the free end. To place a joist, first the choker is slipped around the joist, then the loop at the end of the choker is placed on the hook at the bottom of the headache ball. The crane then lifts the joist to the connectors who set it in place. Once the joist is in place the crane operator maneuvers the headache ball in such a way that the looped end of the choker slides off the hook at the end of the headache ball, disconnecting the joist from the crane. The crane then pulls the cable and the ball up and away.

The crane operator moves the crane and joist as directed by hand signals from the connectors. When the connector's position allows him to see the crane operator, the connector gives hand signals regarding the desired movement of the crane directly to the crane operator. When the connector and the crane operator are not visible to each other, or "in the blind," the connector gives the signals to the signalman who relays them to the crane operator.

At the time of the injury, plaintiff and his partner, Gregory Hudella, were working as connectors. They had placed two joists and were working on the third. Hudella was on a ladder against an inside wall of the building under construction. The wall contained holes or pockets into which he placed one end of each joist. Directly across from Hudella, plaintiff was standing on the beam upon which he was setting the other end of each joist. After Hudella placed his end of the third joist into the pocket, plaintiff placed his end in the proper posi-

---

[1] The third-party action for indemnity against Sprague is not involved in this appeal.

tion on the beam and stood with his right foot on the joist in order to hold it in place. At that time, the crane pulled the joist up in the air causing plaintiff to be thrown off the beam. He fell to the ground, sustaining injuries.

Gregory Hudella, plaintiff's connector-partner on the day in question, testified that from his position on the ladder he was unable to see the crane operator; he himself had earlier stood on the beam where plaintiff was standing just prior to the injury and, from that position, he had been able to see the crane operator; plaintiff was giving signals directly to the crane operator; after the third bar joist was set into position with one end in the pocket and the other end on the beam, plaintiff was standing on the beam facing the crane operator and had one foot on top of the bar joist to hold it in place; plaintiff then gave the hand signals for "crane down a little bit" and "up easy," which means move up very slowly, in order to disconnect the crane from the joist; after the "up easy" signal the joist went up in the air quickly and plaintiff was thrown approximately 20 feet into the air before he fell to the ground; he never saw a signal given for the "up and out fast" movement that the joist actually sustained; this was plaintiff's first day on this particular construction site; and the signals used were the signals accepted in the trade.

George Hominick, an ironworker employed by Sprague, testified that he was the signalman on the day of plaintiff's injury; as signalman he relayed the signals from the connectors to the crane operator when they were working in the blind; the crane operator does not give but only receives signals; just prior to being thrown off the beam plaintiff was giving signals directly to the crane operator; plaintiff gave the "easy up" signal; after Hominick saw the "easy up" signal given the joist went up in the air very quickly and plaintiff was thrown into the air before falling to the ground; and the use of a signalman and the hand signals used were common and accepted within the trade.

Plaintiff testified that after he and the other connector had positioned the third joist he was standing on the beam with his foot on the joist to hold it in position; at that time he had a clear view of the crane operator but the crane operator was not looking at him; he held the "easy up" signal so the crane operator would see it; the crane operator turned toward him and made a movement following which he was thrown up to the height of the beams which formed the next level of the building before falling to the ground; he was familiar with the job of a connector; and he did not remember whether he had had any discussion with the crane operator before starting the job that

day.

Eugene Stromberg testified that he was the foreman and one of the crew of five ironworkers employed by Sprague; he supervised and directed the ironworkers and assigned them to various jobs; the crane operator decided on the positioning of the crane and directed the ironworkers in setting it up; the crane operator stays in the cab of the crane and waits for the signals to be given to him; and he himself had pointed out Hominick to the crane operator as the man who would be giving signals that day.

Jack Greinke testified that he was employed by the subcontractor Tri-State and was the crane operator on the construction site; at the time of the accident he was working in the blind and could not see the plaintiff; because he was in the blind he was at all times receiving signals from the signalman, the only man he could see, and not the connectors; when working in the blind the signalman is the "boss"; after the third joist had been placed, immediately before the injury, the signalman gave the "cable up" signal; he started to raise the cable but stopped upon receiving the signal to do so; when he operates in the blind he always moves the crane slowly; if he feels appropriate safety measures are not being taken he will refuse to do a job; and if he receives a signal he knows is unsafe he will refuse to follow it.

At the conclusion of plaintiff's case, the court granted the motion of Enger-Vavra, Inc., for a directed verdict and entered judgment thereon. In response to a special interrogatory, the jury found that defendant Tri-State's conduct was not "the primary and significant cause" of plaintiff's injury and returned a verdict for Tri-State. Judgment was entered on the jury verdict. Plaintiff appeals the judgments and the denial of his post-trial motion.

OPINION

■ We first consider the argument raised in defendant Tri-State's brief that plaintiff's post-trial motion was insufficiently specific and, therefore, any error as to the instructions has been waived. Under section 2—1202(b) of the Code of Civil Procedure, a post-trial motion "must contain the points relied upon, particularly specifying the grounds in support thereof ***." (Ill. Rev. Stat. 1981, ch. 110, par. 2—1202(b).) Supreme Court Rule 366(b)(2)(iii) provides that "[a] party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." (87 Ill. 2d R. 366(b)(2)(iii).) Any claimed error in the instructions cannot be reviewed upon appeal unless the grounds for the claim of error are set forth with particularity in the post-trial motion. *Brown v. Decatur*

*Memorial Hospital* (1980), 83 Ill. 2d 344, 415 N.E.2d 337.

In the instant case that portion of plaintiff's post-trial motion alleging error regarding jury instructions states:

> "2. The Court erred in modifying plaintiff's Instruction No. 21, I.P.I. No. 180.04, the issues instruction, by striking the charge 'pulled away the headache ball, hook and choker without a signal for that operation.'
>
> 3. The Court erred in refusing to give plaintiff's Instruction No. 18, I.P.I. 180.01, containing the portions of the Structural Work Act contained in Section 67 of that Act relating to signals."

It is our opinion that plaintiff's post-trial motion set forth the claimed error in a manner sufficiently specific to meet the requirements of the Code and Rules (see *Brown*) and, therefore, the issue as to whether the trial court erred in refusing plaintiff's tendered instructions was properly preserved.

■ Plaintiff first contends that the court erred in refusing his instruction No. 18 (Illinois Pattern Jury Instruction (IPI), Civil, No. 180.01 (2d ed. 1971)) as originally tendered. The tendered instruction stated that there was in force in Illinois a statute called the Structural Work Act and set forth the provisions of sections 1, 7a and 9. (Ill. Rev. Stat. 1981, ch. 48, pars. 60, 67, 69.) The court refused the inclusion of the provisions of section 7a which states in pertinent part that where, as in the instant case, certain hoisting apparatus is used "a complete and adequate system of communication by means of signals shall be provided and maintained by the owner, contractor or sub-contractor ***." Ill. Rev. Stat. 1981, ch. 48, par. 67.

Generally, unless the record includes some evidence to support the theory set out in a tendered instruction, the court is not required to give it. (*GNP Commodities, Inc. v. Walsh Heffernan Co.* (1981), 95 Ill. App. 3d 966, 420 N.E.2d 659.) An instruction not supported by the evidence cannot be given. (*Vincent v. Wesolowski* (1967), 87 Ill. App. 2d 477, 232 N.E.2d 120.) Specifically, instructions concerning violation of a statute should not be given unless the evidence is adequate to support a finding that a violation actually occurred. *Figarelli v. Ihde* (1976), 39 Ill. App. 3d 1023, 351 N.E.2d 624; *Wallace v. Weinrich* (1980), 87 Ill. App. 3d 868, 409 N.E.2d 336; IPI Civil No. 60.00.

In urging that the court erred in refusing the tendered instruction, plaintiff predicates liability upon a theory that section 7a of the Act was violated. Specifically, he argues that he was thrown off the beam because the signal he gave was not followed and that it was either not received or not understood. He concludes that his injury re-

sulted from defendant's failure to provide and maintain an adequate system of communication as required by section 7a. However, such theory is not supported by the evidence.

The evidence shows that the hand signals used at the time of plaintiff's injury were those commonly used and accepted in the trade and were known and understood by all the parties utilizing them. At trial the crane operator and each ironworker identified and demonstrated the hand signals for various movements of the crane. The testimony regarding what signal was given and received, and to whom and by whom, although conflicting, would not support a finding that a complete and adequate system of communication by means of signals was not provided or maintained. There was no testimony of confusion regarding the system of communication or the hand signals utilized. Unlike *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60, the witnesses did not contradict themselves and each other on their understanding of the signals. Nor was evidence presented to show that the system was incomplete or inadequate, or that a better means of communication was available or feasible. We cannot conclude on this record that the communication system was less than adequate or that the system was extremely crude. See *Burgh v. Crane Construction Co.* (1968), 102 Ill. App. 2d 188, 243 N.E.2d 590.

As there was no confusion as to the meaning of the signals utilized, the evidence at most shows that the workers failed to properly execute or follow such communication system. The evidence does not support a finding of a wilful violation of section 7a of the Act, which section concerns the completeness and adequacy of the signal communication *system*, not the *execution* of the signals. Although plaintiff's instruction No. 18 as tendered may have accurately stated the law regarding the duty under section 7a, the issue of such duty was not raised by the evidence. It is not error to refuse an instruction if there is no evidentiary basis for that instruction nor to refuse an instruction containing a mere abstract proposition. (*Ramsey v. Greenwald* (1980), 91 Ill. App. 3d 855, 414 N.E.2d 1266; *Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745.) Therefore, it was not error to refuse plaintiff's instruction No. 18 as originally tendered.

■ Plaintiff also contends that the court erred in refusing plaintiff's instruction No. 21 (IPI Civil No. 180.04) as to the issues. The tendered instruction stated that defendant violated the Structural Work Act in one or more of the following:

"Failed to follow signals.

Failed to release the choker from the joist before pulling

away.

Pulled away the headache ball hook and choker without a signal for that operation."

The third violation alleged was refused as repetitive and redundant. It was deleted and the instruction was given as modified.

The first violation set forth in the tendered instruction alleged that defendant "failed to follow signals." It contemplates a finding by the jury that a signal was given but that defendant or his servant acted contrary to such signal. The second violation, "failed to release the choker from the joist before pulling away," differs and is distinct from the first in that no reference is made to signals. Liability under the foregoing portion of the instruction could be premised on a finding by the jury that such actions constituted a violation of the provision of the Act which requires that cranes be operated so as to give proper and adequate protection to the persons employed or engaged thereon. (Ill. Rev. Stat. 1981, ch. 48, par. 60.) However, the third violation, which was refused, is susceptible to various interpretations, none of which render it a novel theory or one essential to the jury's consideration of this cause.

Under one construction, the third violation is based on a theory that the crane operator "pulled away" without any signal. Although contradictory as to the nature of the signal given and by whom given, all of the testimony was in agreement that there was a signal. Thus, since the theory of the refused violation charge was not supported by the evidence, the refusal of that portion of the instruction was not error. (*Skinner v. Baker* (1978), 67 Ill. App. 3d 773, 384 N.E.2d 1360; *Winston v. Chicago Transit Authority* (1971), 2 Ill. App. 3d 151, 276 N.E.2d 65.) The refused portion can also be construed to mean that defendant "pulled away" upon receiving a signal for some other operation. Such a construction renders it the same as the first violation, "failed to follow signals," and was repetitive and, therefore, properly refused. (*Grabner v. American Airlines, Inc.* (1980), 81 Ill. App. 3d 894, 401 N.E.2d 1196; *Christopherson v. Hyster Co.* (1978), 58 Ill. App. 3d 791, 374 N.E.2d 858.) Accordingly, there was no error in the refusal of the plaintiff's instruction No. 21 as tendered.

■ The remaining issues concern the trial court's determination that neither defendant Tri-State nor defendant Enger-Vavra, Inc., is liable under the Act. Liability under the Act requires proof that (1) defendant was in charge of the work, and (2) there was a wilful violation of the Act. (*Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60.) The courts have declined to define the term "having charge of" and consider it a term of common usage and un-

derstanding. (*Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 211 N.E.2d 247.) Before a defendant may be found in charge of the work, it must be shown that he had a direct connection with the construction operations. (*Larson.*) Moreover, to impose liability under the Act, the defendant must have been in charge of the particular operations which involved the violation from which the alleged injury arose. *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134.

Regarding the second element, the term "wilful" is construed to mean "knowing." A violation of the Act is wilful when a person having charge of the work knew or, in the exercise of ordinary care, should have known of a dangerous condition. (*Gundich v. Emerson-Comstock Co.; Lavery v. Ridgeway House, Inc.* (1969), 117 Ill. App. 2d 176, 254 N.E.2d 117.) It is not necessary that there be a reckless or deliberate disregard of the provisions of the Act in order to constitute a wilful violation. (*Gundich.*) The issues concerning "in charge of" and "wilful" are questions of fact upon which reasonable persons might differ and are appropriate for determination by a jury. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481, 394 N.E.2d 403, citing *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785.) Such determination must rest upon an assessment of the totality of the circumstances. *Norton.*

■ With these principles in mind, we next address plaintiff's contention that the jury verdict in favor of defendant Tri-State was contrary to the manifest weight of the evidence. The jury received the following evidence pertinent to this issue. Tri-State was a subcontractor who supplied the crane and crane operator to Sprague, plaintiff's employer, pursuant to a rental agreement. While the crane operator had the right to determine the position of the crane and to direct the ironworkers in setting up the crane, plaintiff's injury did not arise from any violation of such duties. The crane operator had a right to suggest a different signalman if not satisfied, to complain as to the manner of work, to refuse or stop work if ordered to lift objects he deemed too heavy for the crane's capacity, to refuse to follow unsafe signals, and to alone operate the crane. The crane operator did not give the ironworkers any orders or have any authority over them other than in moving and placing the crane. He did not tell them how to position themselves nor how to perform their work.

The crane and crane operator were positioned on one side of a two-story masonry wall in which there was an opening at ground level approximately eight to 10 feet wide and four to six feet high. Plaintiff and Hudella were setting joists on the other side of the wall. Plaintiff

testified that at the time of the accident he was giving hand signals directly to the crane operator and had signaled for "crane down a little" and then "easy up." Hudella stated that plaintiff, while giving the signals, was on the beam and was facing the opening in the wall. The crane operator testified that he had been working in the blind for the entire time; he could not see plaintiff through the wall opening. He had no trouble receiving signals from the signalman. After lowering the third joist into place, he did not know whether the choker was disconnected from the joist. He looked through the boom of the crane at the signalman and took from him the signal for "cable up" and the following signal for "stop." He did not see plaintiff fall.

Communicating by hand signals and using a signalman to relay the signals when working in the blind were common and accepted practices within the trade. The hand signals used were understood by all the parties utilizing them and there was no testimony of confusion regarding the system of communication.

Determination of who was in charge is a classic example of an issue of fact within the province of the jury. Whether defendant Tri-State knew or should have known of an alleged violation is also a question for jury consideration. (*Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888, 289 N.E.2d 12.) A jury verdict will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. (*Old Second National Bank v. Gould* (1979), 75 Ill. App. 3d 839, 393 N.E.2d 1356; *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628.) Verdicts and judgments are considered against the manifest weight of the evidence only when an opposite conclusion is clearly evident or the jury's verdict is palpably erroneous. *Svenson.*

The evidence here presented would support a finding by the jury that Tri-State was not one having charge of the particular phase of the construction from which plaintiff's injury arose. Upon such evidence the jury could also find that there was no wilful violation of the Act. Since both of the above elements must be proved in order to impose liability under the Act, we cannot say that the verdict in favor of Tri-State was contrary to the manifest weight of the evidence and may not disturb such verdict. *Isabelli.*

■ Finally, we address plaintiff's contention that the court erred in directing a verdict for defendant Enger-Vavra, Inc., on the basis that no wilful violation had been shown. As discussed above, before liability can be imposed under the Act it is necessary to prove that the defendant was in charge of the work and, either directly or through a servant, wilfully violated the terms of the Act. (*Gundich v.*

*Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 171 N.E.2d 60.) In its answer Enger-Vavra, Inc., admitted being the general contractor "in charge of" the work. A review of the record, however, fails to disclose any evidence tending to show that Enger-Vavra, Inc., knew or should have known of a violation, as is required to prove wilfulness. We concluded above that there was no error in refusing an instruction directed at a violation of section 7a, regarding the adequacy of the system of communication, and for like reason, we conclude here that the court did not err.

The evidence showed that a commonly-used system of communication by means of hand signals was in use on the construction site at the time of plaintiff's injury. Further, testimony revealed that the crane operator and ironworkers knew and understood these signals. There was no evidence establishing that Enger-Vavra, Inc., knew or should have known the system of communication provided would be, in some way, improperly executed.

It is well-accepted principle in Illinois that a verdict should be directed in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) In the instant case, there was no evidence of a wilful violation of the Act by Enger-Vavra, Inc., and, therefore, a verdict against it could never stand. Accordingly, we find that the court did not err in directing a verdict for defendant Enger-Vavra, Inc.

For the reasons stated above, we affirm the order of the trial court.

Affirmed.

WILSON, P.J., and SULLIVAN, J., concur.