BERNISE BLOOMQUIST, Plaintiff-Appellant, v. JAMES R. ELY *et al.*, Defendants-Appellees.

Third District   No. 3—92—0858

Opinion filed July 22, 1993.

658

Samuel S. McHard, of Katz, McAndrews, Balch, Lefstein & Fieweger, of Rock Island (Stuart Lefstein, of counsel), for appellant.

Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria (Paul Gilfillan, of counsel), for appellees.

JUSTICE STOUDER delivered the opinion of the court:

The plaintiff, Bernise Bloomquist, brought a negligence action against the defendants, James R. Ely and Black Fertilizer, Inc., for injuries she received when her car went off a rural highway on May 1, 1989. The jury returned a verdict for the defendants. The plaintiff appeals, raising numerous alleged errors on the part of the trial court. At trial, the parties presented the testimony of numerous occurrence and expert witnesses. Only those facts necessary for an understanding of the case and for disposition of the issues presented will be set forth.

At trial, the plaintiff testified she was driving her 1982 Chevy Citation to work on Monday morning, May 1, 1989. The weather that day was clear and the roads were dry. The plaintiff lived in Wyoming, Illinois, and worked in Pekin. The route she took to work included a stretch of Route 91. At approximately 7 a.m., the plaintiff was driving south on Route 91 in Peoria County. Just south of Dunlap, Illinois, the plaintiff crested a hill. In front of her she noted a car traveling behind a large chemical/fertilizer spreader truck (hereinafter referred to as the spreader). At the time, her car was operating on cruise control and she was traveling between 50 and 52 miles per hour. She applied the brake, thus taking the car out of cruise control. The car in front of her pulled over into the northbound lane and proceeded to pass the spreader.

As a point of reference, the record shows that just south of Dunlap, there is a stretch of Route 91, approximately six-tenths of a mile long, which is relatively flat and straight. Along this stretch, the highway is divided by a broken yellow line. The record shows there are no "no-passing" signs along this portion of the highway. The record also shows a number of roads and driveways cross or lead off to

the left and right from Route 91. One of these, Fox Road, is a gravel road going east from Route 91. The only sign indicating the presence of Fox Road to southbound traffic is a green sign approximately 270 feet north of the intersection. The sign contains the words "FOX ROAD" and an arrow pointing to the left.

In any event, as the plaintiff entered this stretch of Route 91, she came up behind the spreader. She testified she had noticed no lights on the rear of the spreader. She testified that just before the intersection of Dickison Cemetery Road and Route 91, she turned on her left-turn signal and moved out into the northbound lane. (Dickison Cemetery Road is one quarter mile north of Fox Road.) The plaintiff pulled back into the southbound lane behind the spreader, when she thought she noticed an oncoming northbound vehicle. She testified it was difficult to see around the spreader because it was very wide and had spray booms attached to the sides.

The plaintiff glanced in her rearview mirror and observed a number of cars behind her. She again turned on her left-turn signal and moved out into the northbound lane. She did not see any oncoming traffic so she decided to pass the spreader. The plaintiff testified she commenced this second passing maneuver just past Dickison Cemetery Road.

As the front of her car came about even with the spreader's cab, she noted out of the corner of her eye that the large rear tire of the spreader was moving toward her. She then noticed a light near the front of the spreader. The plaintiff testified that at that moment she wondered if the truck was about to turn left into a nearby field. She moved her car as far over to the left as she could. Realizing she could not pass the truck, she contemplated turning left onto Fox Road. Fearing that she might turn her car over, the plaintiff decided to drive into a farmyard which was situated on the southeast corner of the intersection of Fox Road and Route 91. When she noticed a ditch separating the farmyard from Fox Road she "stomped on" the brakes. Her car skidded on the gravel surface of Fox Road and into the ditch. The car then "bounced" out of the ditch and continued toward a garage. When the car came to a stop, the plaintiff put the car in park and turned the car off.

The driver of the spreader, the defendant, James Ely, pulled into Fox Road and stopped. The plaintiff testified she heard Ely say that he had looked in his mirror, but had not seen her car because the truck was too big. The plaintiff suffered injuries to her head, abdomen and right knee.

Ely testified to being an employee of the codefendant, Black Fertilizer, Inc. Ely testified the spreader he was driving on May 1, 1989, was a modified Ford truck, which when purchased had only the cab and chassis. Ely testified he had done some of the modifications himself. Ely stated he did not refer to any rules or regulations in modifying the Ford truck. He further testified that he did not design the modifications, he only installed them. The record shows that part of the modification included very large rear "floatation" tires. These tires were 5½ feet high and 3½ feet wide. This enabled the vehicle to travel over farm fields causing less compaction of the soil and lessening the chances of the spreader getting stuck. The tires were not to be driven at a speed in excess of 30 miles per hour. With the tanks and other apparatus mounted on the back of the spreader, the vehicle was 11 feet wide. The large rear tires also extended out from the side of the spreader farther than the front tires.

Ely testified that the side mirror mounts were not modified to take into account the widening of the rear of the vehicle. These were the mirror mounts which came with the original cab and chassis. He testified that when driving the spreader he could not see small vehicles that were right behind the spreader or right beside it toward the rear.

On May 1, 1989, Ely was on his way to the farm of Dayton Reed, whose farmhouse was located at the southeast corner of the intersection of Fox Road and Route 91. Ely was proceeding southbound on Route 91 from Dunlap around 7 a.m. At trial, Ely testified that approximately 150 to 300 feet north of Fox Road he moved the left rear tire of the spreader onto the center line. Ely indicated he did this to notify persons driving behind him that he was going to make a left turn. Ely conceded that his rear wheel may have crossed over the center line; however, he did not know how far.

Ely testified he turned on his turn signal and "made his move." A half second later he noticed the plaintiff's car next to the cab of the spreader. The plaintiff's left tires were on the shoulder. Ely indicated this may have been 150 to 180 feet north of Fox Road. He moved his vehicle back over to the right. The plaintiff's car went across Fox Road, hit a ditch and went into Dayton Reed's farmyard. Ely pulled into Fox Road, stopped the spreader and went over to the plaintiff's car. Ely testified he could not recall anything he said to the plaintiff.

Rick Roberts testified he was driving southbound behind the plaintiff on May 1, 1989. Roberts saw the plaintiff signal, indicating she was going to pass the spreader. Roberts testified that the plaintiff commenced this pass approximately 100 to 200 feet north of Fox

Road. As the plaintiff was passing the spreader, Roberts noticed the spreader moving left into the northbound lane. Roberts testified this took place within three or four seconds of the plaintiff's commencing her pass. The plaintiff's car also moved to the left and went off the road. Roberts testified the vehicles came within one or two feet of each other. Roberts testified if the plaintiff had not moved to the left, the vehicles would have collided.

Roberts testified the spreader crossed the center line about 50 feet north of Fox Road and that the plaintiff may have been as close as 10 feet north of Fox Road when she left the roadway. Roberts did not recall seeing any lights blinking on the spreader prior to the spreader moving to the left. After the plaintiff's car came to a stop, Roberts stopped his car on the shoulder of Route 91 and went over to the plaintiff's car. The plaintiff was bleeding from the head and complained that she had hurt her leg. Ely also came over to the car. Roberts heard Ely say he could not see her coming around on the left side and that "he couldn't see around the truck with those mirrors."

As stated above, the jury returned a verdict finding in favor of the defendants. Therefore, the jury did not reach the issue of damages.

Initially, we note the defendants have filed a motion to strike the statement of facts contained in the plaintiff's appellant brief. This motion has been taken with the case. The defendants maintain the statement of facts breaches the provisions of Supreme Court Rule 341 (134 Ill. 2d R. 341) in that it is one-sided, argumentative, conclusory and less than accurate. We have reviewed the record on appeal and do not find the plaintiff's statement of facts sufficiently egregious to warrant granting the motion. We also note our review of the record reveals the defendants' attorney utilized and in some cases came very close to skirting the rules, e.g., his interpretation of the case law surrounding Supreme Court Rule 220 (134 Ill. 2d R. 220), and used other trial procedures to his clients' full advantage. The practices of both parties tended to complicate and extend the litigation in this matter. In any event, we will rely on the record in reviewing the issues raised on appeal. The defendants' motion to strike is denied.

As an additional preface to our discussion of the issues raised by the plaintiff, we note many of the asserted errors center on whether the meeting of Fox Road and Route 91 is an intersection as defined in section 1—132 of the Illinois Vehicle Code (hereafter the Code) (Ill. Rev. Stat. 1991, ch. 95½, par. 1—132). Section 11—706(a)(2) of the Code provides: "No vehicle shall be driven on the left side of the roadway under the following conditions: *** (2) When approaching

within 100 feet of or traversing any intersection or railroad grade crossing." (Ill. Rev. Stat. 1991, ch. 95½, par. 11—706(a)(2).) The issue raised, therefore, as a defense, was whether the plaintiff attempted her pass, *i.e.*, drove on the left side of the roadway, within 100 feet of or while traversing the intersection of Fox Road and Route 91.

The plaintiff asserts this is the only basis upon which the jury could have found her "contributorily" negligent. The defendants claim this issue was not the main focus of their defense and cite numerous other defenses they relied on. While it is true that other defenses were raised, and the jury so instructed, review of the record shows the main focus of the testimony centered on the nature and attributes of the spreader, and on whether the meeting of Fox Road and Route 91 constituted an intersection, thus, for all intents and purposes, creating a "no-passing zone." With this in mind, we now address the issues raised by the plaintiff.

We first address the plaintiff's contention that the trial court erred in allowing the expert testimony of Peoria County Deputy Sheriff Larry Bernard and Illinois Department of Transportation District 4 traffic engineer Mike Ripple. (The report of proceedings contains the spelling "Rippel," but other parts of the record, as well as the parties, refer to this gentleman as "Ripple.") The trial court denied the plaintiff's motion *in limine* seeking to bar the opinion testimony of Bernard and Ripple.

At trial, Larry Bernard testified he was the police officer called to the scene after the incident. *Inter alia*, Bernard testified that in his opinion the meeting of Fox Road and Route 91 constituted an intersection under section 1—132 of the Code. Bernard also opined it was "illegal" to pass another vehicle at such an intersection. Bernard was further allowed to testify that the fertilizer spreader was an implement of husbandry under the Code and therefore exempt from some of the vehicle equipment and licensing requirements of the Code.

Mike Ripple testified that Fox Road was a publicly maintained roadway and that the meeting of Fox Road and Route 91 constituted an intersection as defined by the Code. He was of the opinion the road markings and signage were appropriate on this stretch of Route 91. Ripple also testified a vehicle cannot be driven on the left side of a roadway within 100 feet of an intersection.

On appeal, citing *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543, 610 N.E.2d 77, the plaintiff asserts Bernard and Ripple were experts under Supreme Court Rule 220 (134 Ill. 2d R. 220) who were not properly disclosed pursuant to the requirements of that rule. In response, the defendants maintain that un-

der the case law in existence at the time, these men were not experts for purposes of Rule 220, in that they were not "retained" as experts. In any event, the defendants argue even if they were experts under Rule 220, their existence and opinions were fully disclosed to the plaintiff within the period mandated for disclosure of expert witnesses.

In pertinent part, Rule 220(b) states: "In order to insure fair and equitable preparation for trial by all parties the identity of an expert who is retained to render an opinion at trial on behalf of a party must be disclosed ***." (134 Ill. 2d R. 220(b).) Rule 220(c)(1) provides that upon being served with Rule 220 interrogatories, a party "retaining or employing" an expert witness must disclose the subject matter of the expert's expected testimony, the expert's opinion on the matter, the basis for that opinion and the expert's qualifications. 134 Ill. 2d R. 220(c)(1).

In the instant case, on November 13, 1991, the defendants responded to the plaintiff's Rule 220 interrogatories regarding experts. In pertinent part, the defendants stated in response to the first question: "These Defendants have not retained any 'Rule 220' experts to date according to Illinois case law. However, in the spirit of good faith compliance with discovery herein, these Defendants would state that they intend to call Deputy Larry Bernard of the Peoria County Sheriff's Office, who investigated this accident and who rendered opinions in this cause in his deposition on Nov. 13, 1991." The subsequent questions are answered by referring generally to Bernard's deposition.

Also on November 13, 1991, the defendants filed a motion to extend the time to disclose experts. The trial court subsequently granted the motion extending the time to disclose experts to January 10, 1992.

The record contains a letter addressed to the plaintiff's attorney, dated January 8, 1992, wherein the defendants' attorney informs the plaintiff that he has spoken with Mike Ripple, who he believes will testify that "no-passing" markings at the intersection of Route 91 and Fox Road were not required. Ripple would also state that "the department" considered it improper for a person to attempt to pass within 100 feet of the intersection. The letter went on to state: "I don't technically consider Mr. Ripple a Rule 220 expert, since I have not 'retained' him and will be paying him no fee. Specifically, he is simply an individual who has knowledge of pertinent facts in this lawsuit as a result of issues raised by your experts." Ripple was deposed

on March 30, 1992. The trial in the instant case commenced on July 13, 1992.

■ We think it clear that Bernard and Ripple were Rule 220 experts even under the case law in existence at the time. In *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525, the supreme court found that Rule 220 obliges litigants to disclose the identity and opinions only of those witnesses who are engaged for the purpose of giving an expert opinion at trial. In *Tzystuck*, the court held a treating physician is not an expert within the meaning of Rule 220. In discussing the case law since the *Tzystuck* opinion, the supreme court in *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543, 610 N.E.2d 77, noted that the appellate court, in deciding if an expert was subject to the disclosure requirements of Rule 220, looked to the expert's relationship to the case. The court stated: "If the expert is intimately involved in the underlying facts giving rise to the litigation and he would reasonably be expected to form an opinion through that involvement, then disclosure is not required. In such a case, the opposing party is unlikely to be surprised by the testimony. On the other hand, where the expert's contact with the case is slight, or where the opinion rendered is unrelated to the expert's involvement in the case, then disclosure is required." *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543, 549, 610 N.E.2d 77, 80.

The defendants cite no appellate court case following the *Tzystuck* case, which interpreted the treating physician exception to include the type of experts involved here. Ripple had no involvement in this occurrence whatsoever other than his being called as an expert. The opinions expressed by Bernard were unrelated to his involvement as investigating officer. We note the defendants were hesitant in fully asserting that Bernard and Ripple were not Rule 220 experts, in that they disclosed the identity of these experts within the time required by the trial court order.

■ However, this said, we find under the circumstances of this case that the trial court did not err in allowing the expert testimony of Bernard and Ripple. The *Wakeford* court stated that the primary basis for its decision in *Tzystuck* was the need to eliminate surprise expert testimony. In the instant case, the opinions expressed by Bernard and Ripple were disclosed in their deposition testimony. We find the plaintiff had knowledge of the proffered expert testimony months in advance of trial. Although we do not condone the practice of the defendants' attorney in this matter, we find under the circum-

stances the plaintiff was not surprised by the testimony and therefore can claim no prejudice.

The plaintiff contends the trial court erred in instructing the jury on the statutory prohibition against driving on the left side of a roadway within 100 feet of or while traversing an intersection. (See Ill. Rev. Stat. 1991, ch. 95½, par. 11—706(a)(2).) The plaintiff maintains the meeting of Fox Road and Route 91 is not an intersection for purposes of the Code. Secondly, she argues the "direct cause" of the occurrence, *i.e.*, the spreader crossing the center line, took place more than 100 feet from the intersection; therefore, this statutory prohibition was not relevant.

The Code defines an "intersection" in pertinent part as: "The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles ***." (Ill. Rev. Stat. 1991, ch. 95½, par. 1—132.) A "highway" is defined as: "The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." Ill. Rev. Stat. 1991, ch. 95½, par. 1—126.

■ The record in the instant case fully supports the finding that this area constituted an intersection within the meaning of section 1—132. The roadway was publicly maintained and served as access to a number of farms. The record also shows, despite the plaintiff's representation to the contrary, that the road continued until it eventually intersected another highway. In other words, it was not a dead end as asserted by the plaintiff. Also, we note indications in the record of a stop sign at the T-intersection of Fox Road and Route 91 for traffic turning onto Route 91. All of these factors point to the area falling within the relatively broad definition of an intersection as found in section 1—132 of the Code.

In regard to whether or not the "direct cause" of the incident took place more than 100 feet from the intersection, we note the testimony was conflicting on this issue. While James Ely believed he first saw the plaintiff after he moved the spreader toward the center line some 100 to 300 feet from the intersection, witness Rick Roberts estimated the spreader crossed over the center line approximately 50 feet from the intersection. Based on this conflicting testimony, we cannot say the evidence did not support giving this instruction. Generally, a jury instruction is justified if it is supported by some evidence in the record, and the trial court has the discretion to determine

which issues have been so raised. *Caballero v. Royston* (1991), 219 Ill. App. 3d 477, 579 N.E.2d 994.

In a related argument, the plaintiff maintains the trial court erred in refusing two proffered instructions. Section 11—707(b) states: "Where signs or markings are in place to define a no-passing zone as set forth in paragraph (a) no driver may at any time drive on the left side of the roadway within the no-passing zone or on the left side of any pavement striping designed to mark such no-passing zone throughout its length." (Ill. Rev. Stat. 1991, ch. 95½, par. 11—707(b).) Section 11—707(c) provides in pertinent part: "The pavement striping designed to mark the no-passing zone may be crossed from the left hand lane for the purpose of completing a pass that was begun prior to the beginning of the zone in the driver's direction of travel." Ill. Rev. Stat. 1991, ch. 95½, par. 11—707(c).

The plaintiff's proffered instruction No. 24 basically related the substance of the above-quoted statute. In addition, proffered instruction No. 34 stated in pertinent part: "There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that the center line may be crossed from the left hand lane for the purpose of completing a pass that was begun prior to one-hundred (100) feet prior to an upcoming intersection." Both proffered instructions told the jury that if they found a party had violated the statute, they could consider that fact along with all the other facts and circumstances in deciding if that party was negligent.

The trial court refused to give instruction No. 24 because there was no evidence the area where the incident occurred was designated a "no-passing zone" by signs or pavement striping. The trial court refused to give instruction No. 34 because it was an incorrect statement of sections 11—707(b) and (c). The plaintiff argues that if a party may complete a pass on the left, whenever the maneuver is commenced prior to entering the no-passing zone, then by analogy, a person should be able to complete a pass within 100 feet of an intersection, if the pass was commenced more than 100 feet from the intersection. Thus, the plaintiff argues the trial court should have given the proffered instructions.

■ While the trial court is given considerable discretion in determining the form of the instructions to be given, the instructions given must be supported by some evidence in the record and they must correctly state the law. (*Ramos v. Pankaj* (1990), 203 Ill. App. 3d 504, 561 N.E.2d 744.) Specifically, instructions concerning violation of a statute should not be given unless the evidence is adequate to support a finding that a violation actually occurred. (*Wallace v. Weinrich*

(1980), 87 Ill. App. 3d 868, 409 N.E.2d 336.) It is not error to refuse an instruction if there is no evidentiary basis for that instruction or to refuse an instruction containing a mere abstract proposition. *Blake v. Tri-State Crane Service, Inc.* (1983), 114 Ill. App. 3d 1059, 449 N.E.2d 946.

In the instant case, the area was not designated a no-passing zone pursuant to section 11—707. The provisions of section 11—707 apply to those portions of the highway designated no-passing zones by signs and roadway markings. This statute was unrelated to the situation in the instant case. There was no evidence presented that this statute applied to this stretch of Route 91. Therefore, the trial court correctly refused plaintiff's proffered instructions Nos. 24 and 34. In addition, we note instruction No. 34 is an incorrect statement of the law. The instruction embodies the plaintiff's attempt to apply the exemption found in section 11—707(c) to the situation in this case. However, this proffered instruction does not reflect the wording of the Code and is a misstatement of the law.

■ The plaintiff also asserts the trial court erred in refusing to instruct the jury on the doctrine of imminent peril. We note the Committee on Jury Instructions in Civil Cases recommends that no instruction be given on the duty of one in imminent peril. (See Illinois Pattern Jury Instructions, Civil, No. 12.02 (3d ed. 1992).) Therefore, we find the trial court did not abuse its discretion in refusing to give this instruction.

During the trial, the plaintiff moved for a finding by the court that the spreader was not an implement of husbandry as defined by the Code. Implements of husbandry are exempt from certain provisions of the Code, such as those dealing with equipment requirements (see Ill. Rev. Stat. 1991, ch. 95½, par. 12—101(b)), and size, weight and load requirements (see Ill. Rev. Stat. 1991, ch. 95½, par. 15—101(b)). In pertinent part, the Code defines an implement of husbandry as "[e]very vehicle designed and adapted exclusively for agricultural, horticultural, or livestock raising operations." (Ill. Rev. Stat. 1991, ch. 95½, par. 1—130.) Following argument, the trial court denied the motion stating that it could not direct a factual finding on the issue of whether the spreader was an implement of husbandry under the Code. The court found this was a question of fact for the jury to decide.

On appeal, the plaintiff contends the trial court erred in denying the motion because the evidence showed the spreader was not "designed and adapted exclusively for agricultural" purposes. The plain-

tiff points to the fact that the tank and spraying apparatus were not permanently attached to the truck body and could be removed.

It is the function of the jury to resolve controverted issues of fact. (*Fakhoury v. Vapor Corp.* (1991), 218 Ill. App. 3d 20, 578 N.E.2d 121.) Questions on which reasonable men could arrive at different results should never be determined as a matter of law. *Berner v. Kielnik* (1983), 117 Ill. App. 3d 419, 453 N.E.2d 729.

■ In the instant case, we view the issue of whether the spreader was an implement of husbandry as at the most a mixed question of law and fact. In any event, we find the trial court did not err in leaving this question of fact for the jury to decide.

Also during trial, the plaintiff orally moved that an answer to interrogatories involving photographs of the spreader be admitted as a judicial admission. The plaintiff requested the court instruct the jury that there was a binding admission that these photographs, previously admitted as plaintiff's exhibits 26-A and 26-B, showed the exact vehicle involved in the incident. Apparently, the photographs were actually of a similar but different vehicle. Following argument, the trial court denied the motion.

The record indicates that sometime after the incident, the defendant, Black Fertilizer, Inc., sold or otherwise disposed of the cab and chassis of the spreader involved in this case. On August 29, 1990, the defendants responded to the plaintiff's request to produce and propounded interrogatories. One of the interrogatories in part asked: "Were any photographs, videotapes or motion pictures taken which in any way relate to the occurrence alleged in the complaint?" The defendants responded: "Defense counsel has possession of nine Polaroid photographs of the vehicle/scene of the occurrence, which are attached to the response to the request for production." Two of the photographs were later admitted during trial as Exhibits 26-A and 26-B. Defense counsel utilized the fact that these photographs were not of the actual spreader involved in cross-examining the plaintiff's witnesses. Thereafter, the plaintiff moved to have the defendants bound by their previous representation that these photographs were of the actual vehicle.

In response to the motion, the defendants asserted in affidavits that they personally did not view the photographs prior to the response to the request for production. Most of the work in completing the final answers to the interrogatories and request to produce was done by their attorney. The defendants further asserted that the fact that the photographs were of a similar vehicle and not the actual spreader involved in the incident was made clear to the plaintiff's at-

torney at the depositions of James Ely and Dale Black taken on October 26, 1990.

Generally, a judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge. (*Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 508 N.E.2d 301.) A judicial admission can be either documentary or testimonial. *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 415 N.E.2d 599.

■ In the instant case, the record shows the plaintiff's attorney knew nearly two years before trial that the photographs were of a similar vehicle and not the actual vehicle driven by James Ely on May 1, 1989. Under these circumstances, the plaintiff can claim no prejudice. The trial court correctly denied the plaintiff's motion.

The plaintiff also maintains the jury erred in finding her "contributorily" negligent. She contends the manifest weight of the evidence shows she was not contributorily negligent.

■ We note the jury signed verdict form C, which they were instructed to use if they found for the defendants *or* if they found the plaintiff's contributory negligence amounted to 50% or more of the total proximate cause of her injury. Therefore, the jury could have simply found the defendants were not negligent. We do not know the final basis for their decision.

Even if the jury found the plaintiff contributorily negligent, we cannot say on the record presented that such a finding is unsupportable. The question of contributory negligence is ordinarily a question of fact for the jury. If there is any evidence of contributory negligence on the part of the plaintiff, a question of fact is presented that must be left to the jury for determination. *Gruidl v. Schell* (1988), 166 Ill. App. 3d 276, 519 N.E.2d 963.

The remaining issues raised on appeal by the plaintiff relate to the issue of damages. Since the jury did not reach this issue, and we find no error requiring a new trial, we need not address these issues.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

McCUSKEY, P.J., and BRESLIN, J., concur.