BOSTON UNIVERSITY CHAPTER,
AMERICAN ASSOCIATION OF
UNIVERSITY PROFESSORS, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

Trustees of Boston
University, Intervenor.

No. 87–1004.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1987.

Decided Dec. 21, 1987.

Warren H. Pyle with whom Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, Mass., Dahlia C. Rudavsky and McDonald, Noonan & Kaplan, Newton, Mass., were on brief, for petitioner.

Jacqueline W. Mintz, Ann H. Franke, Washington, D.C., Julius G. Getman, Edward F. Sherman, Austin, Tex., Mary Ann Glendon, Thomas C. Kohler, Washington, D.C., and Eileen Silverstein, Hartford, Conn., on brief for American Ass'n of University Professors, amicus curiae.

Judith A. Dowd with whom Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., were on brief, for respondent.

Stanley R. Strauss with whom Charles I. Cohen, Gregory W. Homer and Vedder, Price, Kaufman, Kammholz & Day, Washington, D.C., were on brief, for intervenor.

Gerald A. Bodner, Labor Counsel, New York City, on brief for Yeshiva University, amicus curiae.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

The Boston University Chapter, American Association of University Professors (Union) has petitioned this court for review of an order of the National Labor Relations Board (Board).[1] The Union seeks to reverse the Board's decision dismissing unfair labor practice charges filed by the Union against Boston University (University), alleging violation of Sections 8(a)(1) and (5) of the National Labor Relations Act (Act), 29 U.S.C. § 151 *et seq.*

We do not address this issue from a *tabula rasa.* *See Trustee of Boston Univ-*

---

1. Reported at 281 N.L.R.B. No. 115.

*ersity v. N.L.R.B.,* 575 F.2d 301 (1st Cir. 1978). A brief recount of the pertinent background is thus appropriate.

*Background*

On October 18, 1974, the Union filed a petition for representation with the Board, seeking certification as the collective bargaining agent for a unit composed of all regular full-time faculty members at the University except for those in the Schools of Law, Dentistry and Medicine.[2] The University objected to the appropriateness of the unit, alleging that the full-time faculty were excluded from coverage of the Act by virtue of either their supervisory or managerial status.[3] Notwithstanding said objections the Board ordered and held an election in which a majority of those employees presumably eligible voted in favor of being represented by the Union. After various administrative proceedings were completed the Union was certified by the Board as the bargaining representative of the unit sought.

The Union's bargaining request was rejected by the University, leading to the filing of the unfair labor practice charges presently before us. The Board's summary process was invoked and on March 22, 1977 the Board concluded that the University had violated Sections 8(a)(1) and (5) of the Act, and ordered it to bargain with the Union.[4] The University petitioned this Court for review and the Board cross-appealed for enforcement of its order. We affirmed the Board. *Trustees of Boston University, supra.*[5]

On July 11, 1978, the University petitioned the Supreme Court for a writ of certiorari. On February 20, 1980, while this petition was still pending, the Supreme Court decided *N.L.R.B. v. Yeshiva University,* 444 U.S. 672, 100 S.Ct. 856, 63 L.Ed.2d 115 (1980), a ruling which shall be discussed in further detail *post,* but which in substance holds that under given factual circumstances university faculty members shall be considered managerial employees excluded from coverage by the Act. On March 3, 1980, the University's petition was granted and the judgment of this court recalled and remanded for further consideration in light of the ruling in *Yeshiva. Trustees of Boston University v. N.L.R.B.,* 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980).

Upon our remand to the Board, it reopened the record and in turn remanded the proceedings to the administrative law judge (ALJ) for further action. An extensive hearing was held and a comprehensive opinion issued by the ALJ on June 29, 1984. The ALJ's recommended ruling included findings to the effect that all full-time faculty in the requested unit were managerial employees as described in *Yeshiva,* and in addition, that all those above the rank of instructor were also supervisors. He thus recommended dismissal of the unfair labor practice charge against the University. The Board affirmed the ALJ's rulings and adopted the recommended order dismissing the charge against the University. *Trustees of Boston University,* 281 N.L.R.B. No. 115.

The full circle was completed[6] to this court with the filing by the Union of the

---

2. Also excluded from the petitioned unit were administrative and supervisory personnel.

3. Supervisors, a term defined in 29 U.S.C. § 152(11), are statutorily excluded from coverage by the Act. 29 U.S.C. § 164(a). Managerial employees have been excluded by judicial interpretation. *See N.L.R.B. v. Bell Aerospace Co.,* 416 U.S. 267, 288–89, 94 S.Ct. 1757, 1768–69, 40 L.Ed.2d 134 (1974). The term "managerial employee" has been defined to mean "those who 'formulate and effectuate managerial policies by expressing and making operative the decisions of their employer'." *Id.* at 288, 94 S.Ct. at 1768 (quoting from *Palace Laundry Dry Cleaning,* 75 N.L.R.B. 320, 323 n. 4 (1947)).

4. The decision is reported at 228 N.L.R.B. 1008.

5. We note that of the several issues raised before us in that appeal, the questions raised as to the supervisory and managerial nature of the faculty were limited to the department chairpersons. *Trustees of Boston University v. N.L.R.B.,* 575 F.2d 301, 305–06 (1st Cir.1978).

6. While all of the above was unfolding, the Union and the University negotiated two collective bargaining agreements covering the periods of April 13, 1979 through August 31, 1981 and September 1, 1981 to August 31, 1984. Both contained non-waiver provisions contingent upon a final decision of the issues being litigated.

present petition seeking review of the Board's dismissal.

*Standards of review*

Under the circumstances, the parameters of our scope of action are severely restricted. On the one hand, on questions of fact, the standard of review is confined by Section 10(f) of the Act, which establishes as conclusive those findings of fact which are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(f). Substantial evidence, of course, means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951).

A determination by the Board regarding supervisory[7] or managerial status is a mixed question of law and fact. *Yeshiva*, 444 U.S. at 691, 100 S.Ct. at 867. Such a ruling is nevertheless entitled to deference if it is "warrant[ed] in the record and [has] a reasonable basis in law." *N.L.R.B. v. Hearst Publications*, 322 U.S. 111, 130–31, 64 S.Ct. 851, 860, 88 L.Ed. 1170 (1944). *See also Yeshiva*, 444 U.S. at 691, 100 S.Ct. at 867.

Regarding the law applicable to this case, our judicial hands are tied by *Yeshiva*. The crux of that case is contained in the following passage:

> The controlling consideration in this case is that the faculty of Yeshiva University exercise authority which in any other context unquestionably would be managerial. Their authority in academic matters is absolute. They decide what courses will be offered, when they will be scheduled, and to whom they will be taught. They debate and determine teaching methods, grading policies, and matriculation standards. They effectively decide which students will be admitted, retained, and graduated. On occasion their views have determined the size of the student body, the tuition to be charged, and the location of a school. When one considers the function of a

university, it is difficult to imagine decisions more managerial than these. To the extent the industrial analogy applies, the faculty determines within each school the product to be produced, the terms upon which it will be offered, and the customers who will be served.

444 U.S. at 686, 100 S.Ct. at 864 (footnote omitted). The Court reasoned that the divided loyalty that would be present if the faculty unionized, would be "particularly acute for a university like Yeshiva, which depends on the professional judgment of its faculty to formulate and apply crucial policies constrained only by necessarily general institutional goals." *Id.* at 689, 100 S.Ct. at 865. The Court reemphasized this point when it said that "Yeshiva and like universities must rely on their faculties to participate in the making and implementation of their policies." *Id.*

*Is Boston University a "like university"?*

The Board so found, and given the limitations of Section 10(f) and *Yeshiva*, we must forcefully agree.

In adopting the ALJ's conclusion that the department chairman and full-time faculty are managerial employees pursuant to *Yeshiva*, the Board noted that:

> [T]he faculty has absolute authority over such matters as grading, teaching methods, graduation requirements, and student discipline. Additionally, the faculty is the moving force and almost always effectively controls matriculation requirements, curriculum, academic calendars, and course schedules. The faculty also plays an effective and determinative role in recommending faculty hiring, tenure, promotions, and reappointments (Note 3—We particularly note their authority to effectively veto curriculum and personnel decisions) ... That ultimate authority for decision making at the University rests with the president and board of trustees does not alter the fact that, in practice, faculty decisions on all those policy matters are effectuated in

---

**7.** The Board's ruling concerning the supervisory nature of the full-time faculty above the instructor level need not concern us any further in view of our ruling on the managerial status of those employees.

the great majority of instances. Nor does the fact that the administration occasionally has made and implemented policy decisions without faculty input detract from the collegial managerial authority consistently exercised by the faculty.

281 N.L.R.B. No. 115, at 1–2.

Although these findings by the Board are somewhat conclusory they track the Court's ruling in *Yeshiva*, 444 U.S. at 686, 100 S.Ct. at 864, and are fully supported by the ALJ's decision and the record. We should note that in *Yeshiva*, the various schools composing that institution were also served by a central administrative hierarchy, led by a president as chief executive officer, with the ultimate authority being vested in a board of trustees. *Id.* at 675, 100 S.Ct. at 858. There is no doubt, however, that here, as in *Yeshiva*, in the promulgation of the University's principal business, which is education and research, the faculty's role is predominant, and "in any other context unquestionably would be [considered] managerial." *Id.* at 686, 100 S.Ct. at 864. The various differences pointed to by petitioners between *Yeshiva* and the present case are minor distinctions without substance. Given the constraints of Section 10(f) and *Yeshiva*, our further consideration of this matter is an unnecessary spinning of our judicial wheels.

*The decision of the Board dismissing the unfair labor charges against the University is affirmed and the petition for review is denied.*