(Nos. 80127, 80133 cons.—

THE CHIEF JUDGE OF THE SIXTEENTH JUDICIAL CIRCUIT, Appellee, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Appellants.

*Opinion filed September 11, 1997.—Rehearing denied December 1, 1997.*

334

FREEMAN, C.J., joined by HARRISON and McMORROW, JJ., dissenting.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Jerald S. Post, Assistant Attorney General, of Chicago, of counsel), for appellant Illinois State Labor Relations Board.

Melissa J. Auerbach, of Cornfield & Feldman, of Chicago, for appellant American Federation of State, County & Municipal Employees, Council 31, AFL-CIO.

Carl S. Tominberg, Joseph M. Gagliardo and Stefanie W. Kohen, of Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., of Chicago, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

In these consolidated appeals, we decide whether Kane County assistant public defenders are considered "managerial employees" within the meaning of the Illinois Public Labor Relations Act (the Act) (5 ILCS 315/1 *et seq.* (West 1994)). The Illinois State Labor Relations Board (the Board) found that the assistant public defenders are not managerial employees. Based on this finding, it certified the American Federation of State, County, and Municipal Employees, Council 31, AFL-CIO (AFSCME), to represent the assistants for collective-bargaining purposes. On administrative review, the appellate court reversed, holding that the assistants are managerial employees. Because managerial employees are excluded from collective bargaining under the Act

(see 5 ILCS 315/3(n), 6(a) (West 1994)), this holding precluded AFSCME from representing the assistants. The Board and AFSCME both filed petitions for leave to appeal (155 Ill. 2d R. 315(a)), which were allowed. We affirm the appellate court.

## BACKGROUND

On February 7, 1994, AFSCME filed a representation petition with the Board. AFSCME sought to represent a collective-bargaining unit of all full-time and part-time Kane County assistant public defenders employed by the chief judge of the Sixteenth Judicial Circuit. The proposed unit excluded any supervisors, confidential employees, and managerial employees because the Act does not apply to those types of employees. See 5 ILCS 315/3(n), 6(a) (West 1994).

A hearing was held before an administrative law judge. AFSCME sought to include all of the assistants within the collective-bargaining unit, except Regina Harris. The parties stipulated that this particular assistant was a supervisor within the meaning of the Act. The administrative law judge heard extensive testimony concerning the nature of the Kane County public defender's office and the duties of the assistants. We summarize that testimony.

The duties of the public defender are defined by statute. The purpose of the office is to provide quality legal representation in certain proceedings for indigent individuals who would otherwise not be able to retain quality legal representation. 55 ILCS 5/3—4000 (West 1994). Section 3—4006 of the Counties Code provides, in pertinent part:

"The Public Defender, as directed by the court, shall act as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel.

> The Public Defender shall be the attorney, without fee, when so appointed by the court under Section 1—20 of the Juvenile Court Act or Section 1—5 of the Juvenile Court Act of 1987 or by any court under Section 5(b) of the Parental Notice of Abortion Act of 1983 for any party who the court finds is financially unable to employ counsel." 55 ILCS 5/3—4006 (West 1994).

The public defender is authorized to appoint assistant public defenders to carry out the duties of the office. 55 ILCS 5/3—4008, 3—4008.1 (West 1994).

At the time of the hearing, the Kane County public defender's office consisted of 13 full-time assistants and 3 part-time assistants. The office was arranged into several divisions, including felony trial, felony preliminary hearing, juvenile, DUI, and misdemeanor. The public defender supervised the felony trial division, while assistant Harris generally supervised the other divisions. The office had a caseload of over seven thousand cases per year, and assistants were assigned to handle this caseload.

The assistant public defenders have absolute discretion in handling their cases. The assistants generally do not consult with the public defender about their cases. The public defender testified that more than 90% of the decisionmaking in the felony division occurred without his knowledge or input. Much of the decisionmaking in the other divisions also occurred without his input and without the input of supervisor Harris. The public defender had never interfered with any of the decisions made by the assistants with respect to their cases. The public defender did not tell the assistants how to investigate or develop defenses in their individual cases. Assistants were not required to seek supervisory approval before entering into plea negotiations or entering a plea. They initiated their own investigations, directed investigators, met with clients, and issued subpoenas and other documents. The assistants were fully respon-

sible for all stages of case development and exercised their own independent judgment. The public defender and supervisor Harris handled their own caseloads.

The public defender, however, generally handled the day-to-day operations and administrative matters of the felony division. Supervisor Harris was generally responsible for administrative matters in the other divisions. The office was run in a fairly informal manner. The public defender assigned all cases in the felony trial division, but assistants were permitted to transfer cases among themselves. The office possessed no formal performance evaluations and no formal disciplinary system. The public defender and the assistants all received the same fringe benefits, vacation plan, sick leave and leave of absence policies, and health care options.

The public defender issued a general set of office rules and policies to the assistants, which governed such areas as office dress and hours. Occasionally, the public defender and supervisor Harris issued general directives regarding the handling of cases. The public defender reviewed closed files to determine the outcome of a case and how it was reached, and to make sure certain paperwork requirements were met. The public defender handled budget matters himself. He approved any large expenditures of money and any requests to hire expert witnesses. The public defender and the supervisor also controlled the interviewing and hiring of new assistants. The public defender and supervisor Harris had ultimate supervisory control over administrative matters, although the assistants provided input into some decisions.

After hearing testimony concerning the duties of the assistants, the administrative law judge determined that the assistants under consideration were not managerial employees. Based on this finding, he concluded that the assistants formed an appropriate collective-

bargaining unit under the Act. The administrative law judge recommended that AFSCME's representation petition be granted and ordered a representation election.

The Board adopted the administrative law judge's recommendation, agreeing that the assistant public defenders were not managerial employees. A representation election was held among all full-time and part-time Kane County assistant public defenders, excluding Harris. AFSCME won the election, and the Board certified AFSCME as the collective-bargaining representative of this unit.

The chief judge petitioned directly to the appellate court for administrative review of the Board's order. See 5 ILCS 315/9(i) (West 1994). The appellate court reversed the Board, holding that the assistants are managerial employees. The appellate court based its holding on three factors:

> "(1) the public defender delegates an overwhelming majority of the decision-making responsibilities to members of his staff; (2) the assistant public defenders, on a day-to-day basis, inherently exercise a great deal of authority and discretion in effectuating and achieving the goals of their office; and (3) the professional interests of the assistant public defenders are fundamentally identical to that of the public defender." 275 Ill. App. 3d 853, 859.

In this appeal, we determine whether the assistants are managerial employees within the meaning of the Act.

## ANALYSIS

### I. The Managerial Exclusion

Section 3(j) of the Act defines a "managerial employee" as "an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices." 5 ILCS 315/3(j) (West 1994). The Act excludes these managerial employees from the class of employees who are entitled to

engage in collective bargaining. See 5 ILCS 315/3(n), 6(a) (West 1994). The exclusion is intended to maintain the distinction between management and labor and to provide the employer with undivided loyalty from its representatives in management. See *National Labor Relations Board v. Yeshiva University*, 444 U.S. 672, 682, 63 L. Ed. 2d 115, 125, 100 S. Ct. 856, 862 (1980); *National Labor Relations Board v. Bell Aerospace Co. Division of Textron, Inc.*, 416 U.S. 267, 281-82, 40 L. Ed. 2d 134, 146-47, 94 S. Ct. 1757, 1765 (1974).

The managerial exclusion in the Act was adopted from decisions of the National Labor Relations Board and the United States Supreme Court. See, *e.g.*, *Yeshiva*, 444 U.S. 672, 63 L. Ed. 2d 115, 100 S. Ct. 856; *Bell Aerospace*, 416 U.S. 267, 40 L. Ed. 2d 134, 94 S. Ct. 1757. The statutory definition of managerial employee under the Act is very similar to the definition contained in the two foregoing United States Supreme Court decisions. The Supreme Court's application of the managerial exclusion provides guidance to our analysis.

In *Yeshiva*, the Supreme Court applied the managerial exclusion to preclude the unionization of certain professional employees. Specifically, the Court held that members of the Yeshiva University faculty were managerial employees and therefore excluded from collective bargaining. In explaining the managerial exclusion, the Court stated:

"Managerial employees must exercise discretion within, or even independently of, established employer policy and must be aligned with management. \*\*\* [A]n employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy." *Yeshiva*, 444 U.S. at 683, 63 L. Ed. 2d at 126, 100 S. Ct. at 862.

The Court further stated that, given the concern for divided loyalty between employer and union, "the rele-

vant consideration is effective recommendation or control rather than final authority" over employer policy. *Yeshiva*, 444 U.S. at 683 n.17, 63 L. Ed. 2d at 126 n.17, 100 S. Ct. at 863 n.17. See also *Bell Aerospace*, 416 U.S. at 288, 40 L. Ed. 2d at 150, 94 S. Ct. at 1768 (definition of managerial employee includes generally all employees who " 'formulate and effectuate management policies by expressing and making operative the decisions of their employer' " and is not limited to those employees who have some involvement in labor relations matters); *Board of Regents of the Regency Universities System v. Illinois Educational Labor Relations Board*, 166 Ill. App. 3d 730, 740-41 (1988) (managerial exclusion is not limited to employees who have some potential to affect labor relations matters, such as wages, hours, and other terms and conditions of employment).

In *Yeshiva*, the National Labor Relations Board argued that faculty decisionmaking was exercised in the faculty's own professional interest rather than in the employer's interest. The Court found no justification for such a distinction. Instead, it concluded that the interests of the faculty and the employer were indistinguishable, and any attempt to separate these interests would divide faculty loyalty between employer and union. *Yeshiva*, 444 U.S. at 686-87, 63 L. Ed. 2d at 128-29, 100 S. Ct. at 864-65. In applying the managerial exclusion to the Yeshiva faculty, the Court stated that the Yeshiva faculty was intimately involved in policy decisions in a number of areas, including course offerings, course scheduling, teaching methods, grading policies, admissions standards, graduation standards, size of the student body, tuition, and location of a school. *Yeshiva*, 444 U.S. at 686, 63 L. Ed. 2d at 128, 100 S. Ct. at 864.

The Court conceded that there was some tension between the managerial exclusion and the inclusion of

professionals in collective bargaining. By its ruling, the Court did not intend to prevent all professionals from engaging in collective bargaining. The Court stated that employees who only engage in "the routine discharge of professional duties in projects to which they have been assigned cannot be excluded from coverage even if union membership arguably may involve some divided loyalty." *Yeshiva*, 444 U.S. at 690, 63 L. Ed. 2d at 130, 100 S. Ct. at 866. The Court, however, determined that the Yeshiva faculty exercised "authority which in any other context unquestionably would be managerial." *Yeshiva*, 444 U.S. at 686, 63 L. Ed. 2d at 128, 100 S. Ct. at 864.

Illinois courts have also considered the application of the managerial exclusion to professionals. Most significantly, in *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296 (1995), this court held that assistant Cook County State's Attorneys were managerial employees and excluded from collective bargaining under the Act. This court discussed the statutory powers and duties of the State's Attorney and assistants. These powers and duties include representing the county and the state in the prosecution of civil and criminal actions, prosecuting and defending actions involving a county officer acting in an official capacity, and giving legal advice to county officers. See *Cook County State's Attorney*, 166 Ill. 2d at 302-03. Given the procedural posture of *Cook County State's Attorney*, the Board had not conducted any fact finding at the time of the appeal. This court found that such fact finding was unnecessary because the pertinent inquiry focused on the statutory duties of the assistants, rather than the specific tasks performed by particular individuals. *Cook County State's Attorney*, 166 Ill. 2d at 305. The court therefore decided the issue as a matter of law, based on statute and case law detailing the role of the assistant State's Attorneys.

In determining whether the assistant State's Attorneys were managerial employees, this court stated that "[t]he authority to make independent decisions and the consequent alignment of the employee's interests with management's are hallmarks of managerial status for purposes of labor law." *Cook County State's Attorney*, 166 Ill. 2d at 301. This court determined that the assistants were vested with the authority to exercise the power of the State's Attorney and played a substantial part in discharging the statutory mission of the State's Attorney's office. This court stated that the assistants act as "surrogates for the State's Attorney" in performing the statutory duties of the State's Attorney. *Cook County State's Attorney*, 166 Ill. 2d at 303. Because of this close affiliation with the State's Attorney, the assistant State's Attorneys were found to be managerial employees.

The managerial exclusion has been addressed by the appellate court in other cases. In *Salaried Employees of North America (SENA) v. Illinois Local Labor Relations Board*, 202 Ill. App. 3d 1013 (1990), the appellate court held that, based on the facts presented to the Board, law department attorneys employed by the City of Chicago were managerial employees. The court stated that "[m]anagerial employees are those involved in the direction of the governmental enterprise or a major unit thereof who possesses authority to broadly affect its mission or fundamental methods." *Salaried Employees*, 202 Ill. App. 3d at 1020. The court relied on three factors in finding the employees to be managerial: (1) the informal setup of the office, allowing an employee to work in different divisions of the law department; (2) the authority of all the attorneys to recommend changes in the city's operation and policy; and (3) the large amount of discretion exercised by the attorneys on behalf of the city. The court concluded that the interests of the law department employees were identical to those of the city.

In *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 229 Ill. App. 3d 180 (1992), the appellate court held that, based on the facts presented to the Board, guardians *ad litem* employed in the office of the Cook County public guardian were managerial employees. Pursuant to statute, the public guardian, Patrick Murphy, had been appointed to represent individuals who were found to be incompetent due to age or disability. Because of the caseload, the individual cases were assigned to guardians *ad litem*, who made almost all of the decisions in their respective cases. The Board argued that the guardians *ad litem* did not represent the interests of their employer but, instead, represented the many individual wards of the court. The court rejected this argument. The court concluded that the guardians *ad litem*, through their exercise of extensive discretionary decisionmaking, effectively directed the policies of the Cook County public guardian's office. .

## II. Assistant Public Defenders

In applying the managerial exclusion as defined in the Act, we find that this court's recent decision in *Cook County State's Attorney* is dispositive of the issue. We note that the Board reached its decision in the instant case before *Cook County State's Attorney* was decided and that the appellate court relied heavily on that case in reaching its conclusion. As in *Cook County State's Attorney*, the statute and case law define the duties of the public defender and assistants, such that the instant case can be decided as a matter of law. We hold, as a matter of law, that the assistant public defenders are managerial employees and therefore not subject to the collective-bargaining provisions of the Act.

As noted, the statutory purpose of the public defender's office is to provide quality legal representation in criminal and related proceedings for indigent individu-

als. 55 ILCS 5/3—4000 (West 1994). The statutory duties of the public defender's office are to provide quality legal representation for certain individuals in criminal cases, juvenile cases, and parental notice of abortion cases. 55 ILCS 5/3—4006 (West 1994). As was true of assistant State's Attorneys, the assistant public defenders act as officers for the performance of the general duties of the public defender's office, exercise some portion of the sovereign power of the state, and perform acts that are generally regarded as acts of the public defender. See 55 ILCS 5/3—4008, 3—4008.1 (West 1994); *Warren v. Stone*, 958 F.2d 1419, 1424 (7th Cir. 1992); *People v. Benford*, 31 Ill. App. 3d 892, 895 (1975); *People ex rel. Cook County v. Majewski*, 28 Ill. App. 3d 269, 271-73 (1975).

Although no exact criteria define a managerial employee, this court, in *Cook County State's Attorney*, 166 Ill. 2d at 304, relied heavily on the existence of three factors in determining that assistant State's Attorneys are managerial employees: (1) the close identification of a State's Attorney with the actions of his or her assistants, (2) the unity of their professional interests, and (3) the power of the assistants to act on behalf of the State's Attorney. The relationship between the public defender and the assistants also manifests these characteristics. The assistant public defenders possess significant authority and discretion to discharge the mission of the public defender's office. In effect, they act as surrogates for the public defender.

The Board and AFSCME argue that *Cook County State's Attorney* is distinguishable from the instant case. They assert that assistant State's Attorneys, in general, provide legal representation on behalf of the state. In contrast, the Board and AFSCME argue, the assistant public defenders represent the interests of their indigent clients but do not represent the interests of the state or chief judge.

A similar argument was recently rejected by the Supreme Court. In *National Labor Relations Board v. Health Care & Retirement Corp. of America*, 511 U.S. 571, 128 L. Ed. 2d 586, 114 S. Ct. 1778 (1994), the Court was required to determine whether certain nurses should be considered "supervisors" within the meaning of the National Labor Relations Act. The National Labor Relations Board argued that the nurses were not supervisors because they acted in their own professional interests, not in the interests of their employer. The Court rejected that argument and noted that such an argument had also been rejected in *Yeshiva*:

"The Board's interpretation, that a nurse's supervisory activity is not exercised in the interest of the employer if it is incidental to the treatment of patients, is similar to an approach the Board took, and we rejected, in *NLRB v. Yeshiva Univ.*, 444 U.S. 672 (1980). There, we had to determine whether faculty members at Yeshiva were 'managerial employees.' *** Like supervisory employees, managerial employees are excluded from the Act's coverage. [Citation.] The Board in *Yeshiva* argued that the faculty members were not managerial, contending that faculty authority was 'exercised in the faculty's own interest rather than in the interest of the university.' [Citation.] ***

The Board's reasoning fares no better here than it did in *Yeshiva*. As in *Yeshiva*, the Board has created a false dichotomy—in this case, a dichotomy between acts taken in connection with patient care and acts taken in the interest of the employer. That dichotomy makes no sense. Patient care is the business of a nursing home, and it follows that attending to the needs of the nursing home patients, who are the employer's customers, is in the interest of the employer. [Citation.] We thus see no basis for the Board's blanket assertion that supervisory authority exercised in connection with patient care is somehow not in the interest of the employer." *Health Care*, 511 U.S. at 577-78, 128 L. Ed. 2d at 593-94, 114 S. Ct. at 1782.

See also *Chief Judge*, 229 Ill. App. 3d at 187-88 (reject-

ing the Board's argument that Cook County guardians *ad litem* represented the many individual wards of the court instead of representing the interests of their employer). For similar reasons, we reject the purported distinction as meaningless.

The Board also relies on conflict of interest cases to suggest that the assistant public defenders are not closely aligned with the public defender's office. See *People v. Spreitzer*, 123 Ill. 2d 1 (1988); *People v. Banks*, 121 Ill. 2d 36 (1987); *People v. Robinson*, 79 Ill. 2d 147 (1979). In these cases, the relevant question was whether an assistant could represent a client even if other attorneys in the office had a conflict of interest involving that client. This court found no *per se* conflict of interest. This court determined that the attorneys in the public defender's office could act in the professional interests of their clients and perform the statutory duties of the office despite any allegiance to the office and the other attorneys in the office. See, *e.g.*, *Banks*, 121 Ill. 2d at 42-43.

The conflict of interest cases cited by the Board are not helpful in the context of collective bargaining. As stated, like the relationship between the State's Attorney and his or her assistants, the assistant public defenders act on behalf of the public defender in carrying out the statutory duties of the public defender's office. The nature of this affiliation is not affected by the ability of the assistants to set aside any personal allegiance in a particular case and perform the statutory duties of the office. The professional interests of the public defender, his or her assistants, and the office remain the same: to provide quality legal representation to indigent individuals. In addition, the assistants retain broad authority to act on behalf of the public defender.

Finally, the Board and AFSCME argue that certain public sector attorneys in Illinois and other jurisdictions

have been allowed to organize into collective-bargaining units. The cases and certification orders cited provide little support to the matter involved here. In many of these decisions, the question of managerial status was not even at issue. In addition, the duties of these public sector attorneys are generally different from the duties of the assistant public defenders, as provided by Illinois statute and case law. We emphasize, as we did in *Cook County State's Attorney*, that the holding of the instant case should not be broadly interpreted to mean that all publicly employed attorneys or other professional employees are deemed managerial employees under the Act. Instead, we hold only that the assistant public defenders meet the definition of managerial employees under the Act.

## CONCLUSION

The Kane County assistant public defenders are managerial employees, within the meaning of the Act. They are excluded from collective bargaining under the Act. For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

CHIEF JUSTICE FREEMAN, dissenting:

The majority, relying on this court's opinion in *Office of the Cook County State's Attorney v. Illinois Local Labor Relations Board*, 166 Ill. 2d 296 (1995), holds that the Kane County assistant public defenders are managerial employees as a matter of law and, as such, are precluded from collective bargaining. I disagreed with the holding in *Cook County State's Attorney* then and I disagree that it is dispositive of the issue before this court now. I, therefore, respectfully dissent.

Citing *National Labor Relations Board v. Yeshiva University*, 444 U.S. 276, 63 L. Ed. 2d 115, 100 S. Ct. 856 (1980), and *National Labor Relations Board v. Bell Aero-*

*space Co. Division of Textron, Inc.*, 416 U.S. 267, 40 L. Ed. 2d 134, 94 S. Ct. 1757 (1974), the majority here acknowledges that the managerial exclusion in Illinois' Labor Relations Act was born out of decisions of the National Labor Relations Board and the Supreme Court. The majority then further acknowledges the Supreme Court's application of the managerial exclusion as having "provide[d] guidance" to its analysis. See 178 Ill. 2d at 339. No sooner than it acknowledges these precedents, however, the majority veers off course. Quite contrary to *Yeshiva* and *Bell Aerospace*, the majority here has taken a direction guaranteed to insure every statutorily defined public employer of professional employees absolute freedom from organized labor.

The nature of the managerial exclusion is clear and the principles to be applied in making the managerial status determination may be stated briefly. As defined in *Bell Aerospace*, 416 U.S. 267, 40 L. Ed. 2d 134, 94 S. Ct. 1757, managerial employees are those employees whose interests are more closely identified with those of management or who are representatives of management, although their work does not generally entail the supervision of bargaining unit employees. The "touchstone of managerial status is *** an alliance with management." See *Yeshiva*, 444 U.S. at 695, 63 L. Ed. 2d at 134, 100 S. Ct. at 869 (Brennan, J., dissenting, joined by White, Marshall and Blackmun, JJ.). *Yeshiva* recognizes the existence of such an alliance as being when the employee represents management interests by taking or recommending discretionary actions that effectively control or implement employer policy. *Yeshiva*, 444 U.S. at 683, 63 L. Ed. 2d at 126, 100 S. Ct. at 862. In contrast, employees whose decisionmaking is limited to the routine discharge of professional duties in projects to which they have been assigned cannot be excluded from unionized bargaining even if union membership

arguably may involve some divided loyalty. Key to the managerial exclusion determination is a recognition that *"[o]nly if an employee's activities fall outside the scope of the duties routinely performed by similarly situated professionals will [the employee] be found aligned with management."* (Emphasis added.) *Yeshiva*, 444 U.S. at 690, 63 L. Ed. 2d at 130, 100 S. Ct. at 866.

The principles espoused in *Yeshiva* have been adopted to answer the managerial exclusion inquiry in other than academic settings. In *Montefiore Hospital & Medical Center*, 261 N.L.R.B. 569 (1982), for example, the medical center, as employer, attempted to exclude medical doctors from the bargaining units because the center viewed the doctors as a part of management. The Board noted that as professional employees, the doctors might also be managerial, but their managerial status could not be based on decisionmaking which was merely part of the routine discharge of their professional duties. Consistent with *Yeshiva*, the Board stated that "[o]nly if the activities of professional employees fall outside the scope of the duties routinely performed by similarly situated professionals will they be found aligned with management." *Montefiore*, 261 N.L.R.B. at 570.

Relevant to the managerial determination in the health care area is whether the decisions alleged to be managerial or supervisory are "incidental to" or "in addition to" the treatment of patients. See 2 C. Morris, The Developing Labor Law 1459 n.199 (2d ed. 1983). Decisions which are merely incidental to treatment are not considered managerial, but are viewed merely as being within the scope of the employee's duties.

Finally and, I believe, most importantly, managerial status of employees must be decided on the particular facts of each case. See *Yeshiva*, 444 U.S. at 691, 63 L. Ed. 2d at 131, 100 S. Ct. at 867. In *Bell Aerospace*, the Court noted that the status determination requires

consideration of the employees' *actual* job responsibilities, their authority to act, as well as their relationship with their employer. *Bell Aerospace*, 416 U.S. at 290 n.19, 40 L. Ed. 2d at 151 n.19, 94 S. Ct. at 1769 n.19; see also *Montefiore Hospital & Medical Center*, 261 N.L.R.B. 569 (1982) (noting that in the health care context, the Board must evaluate the facts of each case to determine whether decisions alleged to be managerial are incidental to the professional's treatment of patients).

Although purportedly "guided" by the Supreme Court's application of the exclusion, which requires consideration of the facts of each case, the majority engages in a very different analysis—one which allows for the total disregard of the Board's factual findings. Contrary to *Yeshiva* or *Bell Aerospace*, the majority here decides that "the statute and case law define the duties of the public defender and assistants, such that the instant case can be decided as a matter of law." 178 Ill. 2d at 343.

Aside from my disagreement that managerial status can be determined simply as a matter of law (see *Yeshiva*, 444 U.S. at 691, 63 L. Ed. 2d at 131, 100 S. Ct. at 867 (whether college professors were managerial employees presented mixed question of law and fact); *Boston University Chapter, American Ass'n of University Professors v. National Labor Relations Board*, 835 F.2d 399, 401 (1st Cir. 1987); see also *Bloomquist v. Ely*, 247 Ill. App. 3d 656, 667 (1993) (whether a certain device constitutes implement of husbandry as defined by statute raises mixed question of law and fact)), the relevant statute and case law tell us of no more than the purpose and function of every public defender's office, generally. Neither describes, nor could it, the actual duties of the Kane County assistant public defenders in particular.

Beyond the lack of particularity concerning the Kane County office, the majority's statutory analysis

presents a more fundamental problem: What quantum of statutory detail is sufficient to defeat the need for fact finding? In *Cook County State's Attorney*, the court declined the Board's invitation for administrative agency fact finding as unnecessary to the disposition of the case. In so doing, the court opined that the statutes and the case law provided "sufficient" detail concerning the duties of the State's Attorney and his assistants for determining the issue of the assistant State's Attorneys' status as a matter of law. *Cook County State's Attorney*, 166 Ill. 2d at 305.

Even accepting the *Cook County State's Attorney* court's declination of fact finding as proper to the analysis, the statutory details pertaining to the public defender's office are, to say the least, at a minimum. Thus, even a correct application of the faulty reasoning in *Cook County State's Attorney* to this case should dictate that the status of the assistant public defenders cannot be decided as a matter of law.

A simple comparison of the statutory provisions pertaining to public defenders and those pertaining to State's Attorneys serves to demonstrate the problems, first, with defining what amount of detail is "sufficient" and, second, with finding the level of detail "sufficient" in this case. Specifically, the Counties Code provides, generally, for the creation of the public defender's office. The statute also provides that the purpose of the office is to provide quality legal representation in criminal and related proceedings for persons who would otherwise have no ability to retain quality legal representation. See 55 ILCS 5/3—4000 (West 1994). The duties of the public defender are to provide legal representation in criminal, juvenile, and parental notice of abortion cases. See 55 ILCS 5/3—4006 (West 1994). Further, the statute empowers the public defender to appoint assistant public defenders for the proper discharge of the duties of

the office, and who serve at the pleasure of the public defender. 55 ILCS 5/3—4008, 3—4008.1 (West 1994). Case law adds that the representation of indigent defendants is a requirement of due process of law which constitutes a delegation of sovereignty to the public defender's office (see *People ex rel. Cook County v. Majewski*, 28 Ill. App. 3d 269, 272 (1975)), and that the public defender is responsible for the professional conduct and acts of his assistants (see *People v. Dread*, 27 Ill. App. 3d 106 (1975)). As is apparent, the statute pertaining to the public defender's office provides nothing more than the legislative authorization for the provision of legal representation in particular types of cases.

In contrast, and as recited in *Cook County State's Attorney*, the statute pertaining to the State's Attorneys provides, in significantly greater detail, that

"[t]he State's Attorney is required, among other things:

'(1) To commence and prosecute all actions, suits, indictments and prosecutions, civil and criminal, in the circuit court for his county, in which the people of the State or county may be concerned.

(2) To prosecute all forfeited bonds and recognizances, and all actions and proceedings for the recovery of debts, revenues, moneys, fines, penalties and forfeitures accruing to the State or his county, or to any school district or road district in his county; also, to prosecute all suits in his county against railroad or transportation companies, which may be prosecuted in the name of the People of the State of Illinois.

(3) To commence and prosecute all actions and proceedings brought by any county officer in his official capacity.

(4) To defend all actions and proceedings brought against his county, or against any county or State officer, in his official capacity, within his county.

* * *

(7) To give his opinion, without fee or reward, to any county officer in his county, upon any question or law relating to any criminal or other matter, in which the people or the county may be concerned.

\* \* \*

(11) To perform such other and further duties as may, from time to time, be enjoined on him by law.

(12) To appear in all proceedings by collectors of taxes against delinquent taxpayers for judgments to sell real estate, and see that all the necessary preliminary steps have been legally taken to make the judgment legal and binding.' " *Cook County State's Attorney*, 166 Ill. 2d at 302-03, quoting 55 ILCS 5/3—9005(a) (West 1992).

I read *Cook County State's Attorney* to at least recognize that, in the absence of "sufficient" statutory detail, the managerial exclusion determination should be treated as a question of fact. In fact, the court in *Cook County State's Attorney*, 166 Ill. 2d at 304-05, explained fact finding in *Chief Judge of the Circuit Court v. American Federation of State, County & Municipal Employees, Council 31*, 229 Ill. App. 3d 180 (1992), involving guardians *ad litem*, and *Salaried Employees of North America (SENA) v. Illinois Local Labor Relations Board*, 202 Ill. App. 3d 1013 (1990), involving lawyers of the municipal law department, as necessary because no detailed statutory apparatus, similar to that for State's Attorneys, describes the function of those employees. Here, we have little more than the statutory authorization for the existence of an office, and the majority equates that with *Cook County State's Attorney*'s "sufficient" statutory detail.

At any rate, to be truly guided by the analysis in *Yeshiva* requires not merely consideration of case law and statutory provisions, but also consideration of an employee's *actual* job responsibilities. A view of the Kane County assistant public defenders' actual responsibilities can support but one conclusion—that the assistants' duties are not managerial in nature, but are

merely routine; their decisions are not in addition, but are merely "incidental," to their professional responsibility to render legal services to indigent clients.

Although apparently not relevant to its determination, the majority recites several of the factual findings made by the Board. Because the Board's findings form the basis of my dissent, however, I find it apt to recount them here in somewhat greater detail. At the time of these proceedings Michael McInerney held the position of Kane County public defender. According to McInerney, he assigns each assistant to one of four divisions in the public defender's office. The daily operations and administrative matters of the felony division are McInerney's responsibility, while Supervisor Harris is responsible for the other divisions. McInerney personally handles a caseload of 10 to 15 serious felony cases.

Ordinarily, McInerney assigns all felony trial division cases. In assigning cases, he considers the type of case, the experience of the assistants and the size of their current caseloads. In March 1994, while McInerney was away from the office for a one-week period, he assigned the senior felony division attorney the task of case assignments. However, the senior attorney was given explicit instruction by McInerney concerning how assignments were to be made. McInerney testified that this was an isolated incident. With respect to juvenile cases, the two assistants assigned to that division decide between themselves their specific case assignments.

Once cases are assigned, the assistants are expected to exercise their professional judgment with respect to their representation. Assistants decide how to handle the case, the strategies involved, whether to engage in plea bargaining and what defenses to assert. Decisions made by assistants in connection with their cases are governed solely by the interests of their clients, with the overriding objective being the provision of quality

legal representation. As long as the assistants process cases within the guidelines established by McInerney and Harris, McInerney expects the assistants neither to consider his interests nor to take into account how McInerney, himself, would handle a case in the same situation.

The assistants do not enjoy complete freedom from McInerney's control, however. McInerney and Harris promulgate some of the procedures for case management. For example, McInerney issued a memorandum to the assistants in the felony preliminary hearing division indicating that, based upon his review, the assistants had not prepared case notes thoroughly enough. He set in place an office policy which prohibits (1) pleading a client guilty unless the assistant has read the police report and (2) waiving a preliminary hearing without a plea agreement by the State's Attorney. Additionally, McInerney advised the assistants how to deal with cases in which a client wishes to enter a plea against the assistant's recommendation.

As supervisor, Harris has issued a memorandum establishing a procedure for assistants to follow in cases where a client fails to appear in court. Also, she has issued memoranda concerning the assignment of cases and the specific steps to be followed in custody cases.

It does not appear from the record that the assistants share a similar supervisory function in the management of the office. In fact, the record reveals that in the event that an assistant becomes aware that an investigator employed by the public defender is not following office procedures, the assistant has no authority to direct that individual. The assistant must instead bring the concern either to McInerney's attention or to the attention of the head investigator.

Further, the assistant public defenders have no fiscal oversight responsibilities for the office. Although

McInerney has solicited the assistants' opinion concerning what needs the budget should address, the assistants do not prepare the annual budget, they are never asked to prepare draft proposals of the budget, and they are not invited to offer budget recommendations.

McInerney and Supervisor Harris make even those fiscal decisions involving the use and availability of office funds. In that respect, the assistants have been given limited authority to spend "a couple hundred dollars" of office funds for items relating to their cases, such as hearing transcripts or expert witness fees. Any expenditure in excess of that amount, however, requires McInerney's prior approval. Only McInerney and the office manager know the amount of money maintained in the office account and only those two have access to the office budget figures.

On a single occasion, McInerney allowed one assistant to determine the type of computer equipment that would be appropriate for the office. In this instance, the office had received a prior monetary grant to purchase the equipment. McInerney's reliance on the assistant was necessary only because McInerney lacked adequate knowledge concerning computer technology.

The clearest example of the assistants' nonmanagerial status is the fact that McInerney determines office policies with respect to working hours, office conduct, dress code, requests for time off and vacation. While, on occasion, McInerney seeks input from the assistants on such issues, McInerney has the final say in such matters. Finally, the assistants do not make decisions concerning the hiring of new staff. McInerney testified that, with the exception of one particular instance, he and Supervisor Harris conduct interviews with prospective employees.

Critical to the managerial employee determination in *Yeshiva* was the fact that the faculty's power ex-

tended beyond strictly academic concerns; they were not limited to the routine discharge of their professional duties. In fact, the Yeshiva faculty "substantially and pervasively" ran the university. *Cf. Salaried Employees of North America*, 202 Ill. App. 3d 1013 (attorneys held to be managerial where they all were involved in hiring, had access to all files, and could be assigned to labor-related matters). While in this case there are isolated incidents where the assistants have performed, at McInerney's request, beyond the scope of their legal representation function, McInerney testified that the assistants do not make any decisions on a regular basis except those decisions which directly relate to representation of their clients. The facts clearly demonstrate that in this case, unlike the faculty in *Yeshiva*, it is McInerney and Supervisor Harris who "substantially and pervasively" operate the public defender's office.

The public defender and Harris set policy with respect to the greater number of labor relations issues. More than that, however, the public defender and Harris determine policy with respect to (1) the preparation of case notes, (2) when a guilty plea may be offered, (3) the management of clients who wish to plead other than as recommended by the assistant, (4) the procedure for handling cases in which defendants fail to appear, and (5) the specific steps in the management of custody cases.

What the majority does here is to erroneously elevate the assistants' independent exercise of professional judgment to the level of managerial discretion. Clearly,

> "[w]ork which is based on professional competence necessarily involves a consistent exercise of discretion and judgment, else professionalism would not be involved. Nevertheless, professional employees plainly are not the same as management employees either by definition or in authority, and managerial authority is not vested in professional employees merely by virtue of their profes-

sional status, or because work performed in that status may have a bearing on company direction." *Neighborhood Legal Services, Inc.*, 236 N.L.R.B. 1269, 1273 (1978).

Accord *General Dynamics Corp.*, 213 N.L.R.B. 851 (1974).

As an attempt to bolster its analysis, the majority finds significant that, similar to the State's Attorney and his assistants in *Cook County State's Attorney*, (1) the public defender has a close identification with the actions of his assistants, (2) the public defender and the assistants have a unity of professional interest and (3) the assistants have the power to act on behalf of the public defender. The majority additionally points out that the assistants act as surrogates for the public defender. See 178 Ill. 2d at 344. These characteristics, of course, define the nature of most any professional employer-employee relationship. They are, for that reason, unremarkable for purposes of determining managerial status.

The duties performed by the Kane County assistant public defenders are merely incidental, not in addition, to the rendition of their legal representation; their activities—the rendition of quality legal representation—do not fall outside the scope of those duties routinely performed by similarly situated professionals. The assistants are simply the rank and file employees of the office who exercise professional judgment in the performance of their assigned duties. They are not, therefore, sufficiently aligned with either the chief judge or the public defender and they are not, for that reason, managerial employees. The Board's finding to that effect was both reasonable and consistent with Illinois' Labor Relations Act and should be affirmed.

Before concluding, I find it necessary to address one additional point. To make the holding here more palatable, the majority, just as the majority did in *Cook County State's Attorney*, offers that its holding is limited, in that not all publicly employed attorneys or other

professional employees are deemed managerial employees under the Act. See 178 Ill. 2d at 347. Barring the existence of a statute defining the nature and purpose of the employment, that might be true. Where such a statute exists, however, under *Cook County State's Attorney* and now this case, it appears certain that all such employees must be deemed managerial as a matter of law, regardless of their actual job duties and, apparently, regardless of the sufficiency of the statutory detail.

In conclusion, the majority's application of the managerial exclusion in this case is wholly inconsistent with both the Supreme Court's application of the exclusion in *Yeshiva* as well as with the National Labor Relations Board's interpretation. Although the majority would argue otherwise, I believe that its misapplication of *Yeshiva* was improperly motivated by concerns with some of the more difficult realities of organized labor, *i.e.*, the potential for work stoppages and strikes. Considering the impact of a work stoppage in the public defender's office, the concerns are, admittedly, valid. Such concerns, however, properly rest within the legislature's domain and should be left to be addressed either by that body (see 5 ILCS 315/14(m) (West 1994) (Illinois Public Labor Relations Act expressly forbids certain public employees to strike, *e.g.*, firefighters and paramedics)), or by the parties at the collective-bargaining table (see 1 C. Morris, The Developing Labor Law 815 (2d ed. 1983) (under the National Labor Relations Act, an employer may bargain for a no-strike clause to the point of impasse)); see also 22 Ill. Jur. *Labor and Employment* § 12:37 (1995) (it is unlawful for public employees to strike if, *inter alia*, a collective-bargaining agreement prohibits a strike or the parties have mutually agreed to submit disputed issues to binding arbitration).

Today's holding is an inappropriate usurpation of

the legislature's authority to determine who may be invited to sit at the collective-bargaining table. Worse than that, however, the holding unfairly deprives the Kane County assistant public defenders—intended beneficiaries of the Illinois Public Labor Relations Act's coverage—a right enjoyed by other publicly employed professionals—the right to participate in defining the nature and terms of their employment. For all of the reasons stated, I dissent.

JUSTICES HARRISON and McMORROW join in this dissent.